IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

HAROLD GLENN                                                              PLAINTIFF

v.                            2:05CV00132-WRW

MICHAEL BACHAND, individually and officially
as Chief of Police for the Wynne Police Department;
PAUL NICHOLS, individually and officially as
Mayor for the City of Wynne; ERVIN DOBBINS,
CHARLES HAMRICK, MONROE FUTRELL,
and GLENN HIRONS, individually and officially as
Aldermen for the City of Wynne, Arkansas; THE CITY
OF WYNNE, ARKANSAS                                                        DEFENDANTS

## ORDER

Pending is Defendants' Motion for Summary Judgment.[1]  Plaintiff responded,[2] and Defendants replied.[3]  This is a claim brought under 42 U.S.C. § 1983 by a police officer against the City of Wynne, Arkansas, the Chief of Police, the Mayor, and the City Council. Plaintiff alleges that his constitutional rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments were violated.  Plaintiff further alleges that Defendants violated the Arkansas Civil Rights Act.[4]

---

[1] Doc. No. 27.

[2] Doc. No. 37.

[3] Doc. No. 42.

[4] Ark. Code Ann. § 16-123-101.

1

## I. Background

Plaintiff Harold Glenn ("Glenn") worked for the City of Wynne, Arkansas as a police officer from 1999 to 2004. He was fired by Chief of Police Michael Bachand ("Chief Bachand") for behavior unbecoming a police officer. The termination followed the discovery that Glenn had an affair with a woman living in Wynne -- Heather Grady ("Grady"). Glenn admits this extra-marital affair, which came to light when Grady accused him of sexual assault.

The rape accusation was investigated by an Arkansas State Police officer -- Dale Arnold ("Arnold"). At the close of the investigation, Glenn was cleared of the criminal charge, but Arnold reported to Chief Bachand that Glenn met Grady while Glenn was driving a patrol car and wearing his uniform.

After his termination, Glenn appealed to the Mayor and the City Counsel, and denied that Grady saw him in uniform and in his patrol care. Despite his denial of misconduct, the Mayor and Counsel upheld the termination.

Glenn alleges that he was fired in violation of his constitutional rights to privacy, association, and due process. Glenn also contends that his termination was the result of gender discrimination in violation of the Arkansas Civil Rights Act, and the Equal Protection Clause of the Fourteenth Amendment. Glenn produced evidence that a female animal control officer -- Teena Hawley -- engaged in the same kind of conduct and was not disciplined.

Defendants argue for Summary Judgment because: (1) Glenn does not offer evidence that his Fourth and Fifth Amendment rights were violated; (2) he does not produce sufficient

evidence that his rights to intimate association or privacy were violated; (3) there is insufficient evidence of an intentional equal protection violation; (4) he fails to make a *prima facie* case of gender discrimination; (5) the individual Defendants are entitled to qualified immunity; the City Council is entitled to absolute immunity; and (6) there is no proof that an unconstitutional municipal policy caused the termination.

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[5] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[6]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[7] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[8] I must view the facts in

---

[5]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[7]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[8]*Id.* at 728.

the light most favorable to the party opposing the motion.[9]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[10]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[11]

### III. Authority

#### A. Section 1983 and ACRA

Under § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and laws of the United States, and the violation must have been committed by a person acting under the color of state law.[12]  The Arkansas Civil Rights Act ("ACRA") prohibits persons, acting under color of state law, from depriving any person of "any rights, privileges, or immunities secured by the Arkansas Constitution."[13]  ACRA expressly requires that courts look to federal civil rights law for guidance:  "When construing this section, a

---

[9]*Id.* at 727-28.

[10]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[11]*Anderson*, 477 U.S. at 248.

[12]*West v. Atkins*, 487 U.S. 42, 48 (1988).

[13]Ark. Code Ann. § 16-123-105.

court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871."[14]

### B. Fourth and Fifth Amendment

The Fourth Amendment secures the right of the people to be free from unreasonable searches and seizures.[15] But, the Fourth Amendment cannot be interpreted as creating a general constitutional right to privacy.[16] While the Amendment protects individual privacy against certain kinds of governmental intrusion, its protections often have nothing to do with privacy. Other provisions of the Constitution protect personal privacy from governmental intrusion.[17]

The Due Process Clause of the Fifth Amendment provides that a person cannot be deprived of life, liberty, or property, without due process of law. When government action takes away a person's life, liberty, or property, the process used must be fair and impartial.[18] This is known as procedural due process.

Procedural due process is met when a public employee is given appropriate pre-termination and post-termination proceedings.[19] Before a public employer may lawfully terminate an employee, the employer must provide the employee with appropriate notice and

---

[14]*Id.*; *See also Island v. Buena Vista Resort*, 352 Ark. 548 (2003).

[15]*Boyd v. U. S.*, 116 U.S. 616, 626-27 (1886).

[16]*Katz v. U.S*. 389 U.S. 347, 350 (1967).

[17]*Id.*

[18]*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[19]*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543 (1985).

an opportunity to be heard.[20] Because "[d]ismissals for cause will often involve factual disputes,"[21] a pre-termination proceeding need not prove allegations of misconduct with certainty, but should provide an "initial check against mistaken decisions."[22] Therefore, a pre-termination preceding should make sure that there "are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[23]

Substantive due process is created by the Fourteenth Amendment.[24]

### C. Fourteenth Amendment Due Process

Like the clause in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment prohibits governments from depriving "any person of life, liberty, or property, without due process of law."[25] However, this clause has two components: it includes procedural due process under the Fifth Amendment, and substantive due process.[26] The Due Process Clause of the Fourteenth Amendment guarantees more than fairness, it protects individual liberty against government intrusion regardless of the procedures used to

---

[20]*Krentz v. Robertson Fire Protection District*, 228 F.3d 897, 902 (8th Cir. 2000).

[21]*Loudermill*, 470 U.S. at 543.

[22]*Id.*

[23]*Id.* at 545-46.

[24]*United States v. Salerno*, 481 U.S. 739, 746 (1987); *See also Rochin v. California*, 342 U.S. 165, 172 (1952) (holding that substantive due process prevents the government from engaging in conduct that interferes with rights that are implicit in the concept of ordered liberty)).

[25]U.S. Const. amend. XIV, § 1.

[26]*Creason v. City of Washington*, 435 F.3d 820 (8th Cir. 2006) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).

6

implement them.[27]   It also provides heightened protection against government interference with certain fundamental rights and liberty interests.[28]

### D. First Amendment Freedom of Association and Fourteenth Amendment Privacy

First Amendment protection of "freedom of association" extends to political associations and also to certain intimate human relationships.[29]  The Supreme Court explained that the Bill of Rights is designed to secure individual liberty by protecting highly personal relationships from unjustified interference by the State.[30]  Intimate association protected by the First Amendment includes relationships that are distinguished by "such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."[31]  In a later decision, the Supreme Court said that intimate associations were not limited to family -- but would also include deep attachments and commitments of individuals who share common values and experiences.[32]

There is a continuum of human relationships that are potentially protected, but the Supreme Court left it up to courts to engage in a careful assessment of the objective qualities

---

[27]*Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).

[28]*Reno v. Flores*, 507 U.S. 292, 301-302 (1993).

[29]*Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).

[30]*Id.*

[31]*Id.* at 620.

[32]*Board of Directors of Rotary Intern.v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987).

of a personal attachment, and then to locate it on a spectrum from the most intimate to the most attenuated.[33] Family relationships and marriage are given the greatest protection, while social acquaintances are not protected.[34] The "amorphous social relationship" of dating falls somewhere on the continuum, and is, therefore, entitled to some constitutional protection.[35]

Some courts have found that extramarital adulterous relationships should not be given any constitutional protection.[36] But, others have found that police officers' private sexual affairs have protection, as long as the liaisons do not interfere with legitimate public interests.[37] These cases are in line with a recent Supreme Court decision that found that engaging in consensual sex between adults is a liberty interest protected by substantive due process in the Fourteenth Amendment.[38] However, the Supreme Court did not rely on the First Amendment's freedom of association, when it decided *Lawrence v. Texas*.[39]

---

[33]*Roberts*, 468 U.S. at 620.

[34]*Bush v. Dassel-Cokato Bd. of Educ.*, 745 F. Supp. 562, 569 (D. Minn. 1990) (holding that a student's desire to associate with her friends at a party is not entitled to constitutional protection); *Weinberger v. Navarro*, 957 F. Supp. 220, 223 (S.D. Fla. 1997) (holding that sheriff's friendship with a celebrity was not entitled to constitutional protection).

[35]*Wieland v. City of Arnold*, 100 F. Supp. 2d 984, 988-89 (E.D. Mo. 2000).

[36]*Caruso v. City of Cocoa, Florida*, 260 F. Supp. 2d 1191 (M.D. Fla. 2000); *Marcum v. McWhorter*, 308 F.3d 636 (6th Cir. 2002) (holdings based on *Bowers v. Hardwick,* 478 U.S. 186 (1986)) (overturned).

[37]*Sylvester v. Fogley*, 383 F. Supp. 2d 1135 (W.D. Ark. 2005); *Anderson v. City of LaVergne*, 371 F.3d 879 (6th Cir. 2004); *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003).

[38]*Lawrence v. Texas*, 539 U.S. 558 (2003) (striking down Texas sodomy law as unconstitutional).

[39]*Id*.

Even though police officers have the same rights and privileges as all other citizens, the zone of privacy for public officers is smaller.[40] Privacy rights of police officers must be balanced with the legitimate interests of police departments in maintaining discipline and achieving effective law enforcement.[41]

### E. Ninth Amendment

The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."[42] The Supreme Court has held that the Ninth Amendment secures basic rights in the people, and among those rights is the right to privacy.[43] According to the Supreme Court, the Bill of Rights creates zones of privacy, and the right to maintain personal relationships is a zone that is created by the First Amendment.[44]

### F. Equal Protection

---

[40]*Sylvester*, 383 F. Supp. 2d at 1139 (citing *Swope v. Bratton*, 541 F. Supp. 99, 108 (W.D. Ark. 1982)).

[41]*Id.*

[42]U.S. Const. amend. IX.

[43]*Griswold v. Connecticut*, 381 U.S. 479 (1965); *See also Henne v. Wright*, 904 F.2d 1208 (8th Cir. 1990) (holding that government might protect or recognize rights, but rights, existed before government and independently of it, and would continue to exist after government had been destroyed, and these rights are retained by the people under the Ninth Amendment).

[44]*Griswold*, 381 U.S. at 484.

Intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983.[45]

Where there is no direct evidence of gender discrimination, the *McDonnell Douglas* burden-shifting analysis is applied to §1983 employment discrimination claims as a way to establish intentional discrimination.[46] This is also true for discrimination claims based on the Arkansas Civil Rights Act.[47]

### G. Qualified Immunity

Under qualified immunity, an official will not be held liable for conduct that he did not know was illegal. So, a plaintiff must assert a violation of a federal right that a reasonable official would have recognized as a violation.[48] Government officials are entitled to qualified immunity unless their conduct violates clearly established statutory or constitutional rights.[49]

### H. Municipal Policy

---

[45] *Marshall v. Kirkland*, 602 F.2d 1282, 1298 (8th Cir. 1979).

[46] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806-07 (8th Cir. 2003).

[47] *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[48] *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Audio Odyssey, Ltd. v. Brenton First Nat. Bank*, 245 F.3d 721, 737 (8th Cir. 2001).

[49] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Samuels v. Meriweather*, 94 F.3d 1163, 1166 (8th Cir. 1996); *McCaslin v. Wilkins*, 183 F.3d 775, 778 (8th Cir. 1999).

A municipality can't be liable under § 1983 unless the unlawful action was caused by a municipal policy or custom.[50] However, "[a]n unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business."[51]

**IV. Discussion**

Glenn asserts that his rights to freedom of association, privacy, due process, and equal protection were violated when he was terminated for a private relationship. Glenn also claims that the termination process was unfair.

Glenn has a right under the First Amendment to engage in private intimate relationships without government interference.[52] However, the degree of First Amendment protection is determined by the depth of the relationship, and a casual affair will not be afforded the heightened protection given to marriage. Under the Ninth and Fourteenth Amendments, Glenn has a right to privacy without government intrusion.[53] But, the right to privacy is limited,[54] and is balanced against the interest of police departments.[55]

---

[50]*Lee v. Pine Bluff School District*, 472 F.3d 1026, 1029 (8th Cir. 2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

[51]*Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *Owen v. Independence*, 445 U.S. 622, 633 (1980); and *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985)).

[52]*Roberts*, 468 U.S. at 618.

[53]*Lawrence*, 539 U.S. at 566; *Griswold*, 381 U.S. at 484.

[54]*Sylvester*, 383 F. Supp. 2d at 1139-40.

[55]*Anderson*, 371 F.3d at 882.

Even though Glenn has a right to privacy under the Ninth and Fourteenth Amendments, the Fourth Amendment does not create such a general right.[56] But, under the Fifth Amendment, Glenn has a right to a fair process before being fired and a right to equal protection under the Fourteenth Amendment. A review of the circumstances of this case shows that Glenn has not raised a reasonable inference that his constitutional rights were infringed.

Glenn was investigated for sexual assault based on charges made by Grady. During the course of the investigation, Glenn gave a transcribed statement to officer Arnold admitting to meeting Grady once.[57] However, he changed his story and told Arnold that he had met Grady on more than one occasion.[58]

At the conclusion of the investigation, Arnold told Chief Bachand that Glenn admitted to seeing Grady at least once while he was in uniform and driving a patrol car.[59] Glenn denies this, and vehemently asserts that he never admitted such a thing to Arnold. Chief Bachand terminated Glenn based on Arnold's report.

Glenn's private relationship with Grady was no longer private when she accused him of rape. Even though Glenn was cleared of criminal charges, the state police investigation

---

[56]*Katz,* 389 U.S. at 350.

[57]Doc. No. 29, Ex. 2.

[58]Doc. No. 29, Deposition of Glenn, pp. 50-53.

[59]Doc. No. 29, Ex. 2 and Deposition of Bachand, p. 18.

revealed facts that undermined his credibility and effectiveness as a police officer. Glenn protests that Arnold's report was wrong, and he was fired for something that he did not do.[60]

I must determine if there are reasonable grounds to believe that the charges against Glenn are true;[61] if he was given notice of the charge, an explanation of the evidence against him, and an opportunity to present his side of the story;[62] and, if his right to privacy is trumped by a legitimate governmental interest.

Following the investigation, Glenn was notified by his direct supervisor that he must come to the office to meet with Chief Bachand. Glenn refused, because he believed he would be terminated.[63] Later, Glenn received a termination letter from Chief Bachand explaining why he was terminated, and giving Glenn notice that he could appeal to the Mayor and the City Council.[64]

Glenn filed a grievance with the Mayor,[65] who reviewed the information in the file, but did not reinstate him. Glenn then met with the City Council for over an hour. The Council's decision was evenly split, and because Glenn failed to win a majority, he was not reinstated.[66]

---

[60] Doc. No. 40.

[61] *Loudermill*, 470 U.S. at 545-46.

[62] *Smutka*, 451 F.3d at 526.

[63] Doc. No. 29, Deposition of Glenn, p. 61.

[64] Doc. No. 29, Ex. 1.

[65] Doc. No. 29, Ex. 5, Deposition of Glenn, p. 76.

[66] Doc. No. 29, Deposition of Glenn, pp. 74-77.

Chief Bachand's belief that Glenn met Grady while he was driving a patrol car and in uniform was reasonable. Glenn was given the opportunity to meet with Chief Bachand before his termination, and the termination letter met due process notice requirements. Glenn appealed the initial decision and presented his side. In view of this, Glenn's termination met the minimum due process requirements.

The Chief, the Mayor, and the City Council have a legitimate interest in maintaining police discipline, and protecting the reputation of the police department. This interest outweighs Glenn's privacy right. Moreover, his private relationship was not the basis of his termination. Glenn was terminated because the Chief had reliable information that he was with Grady while in uniform and driving his patrol car.

Giving all reasonable inferences to Glenn, there is not enough evidence to create a fact question that Glenn's rights to association, privacy, and due process under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments were violated. As stated above, Glenn does not have a right to privacy under the Fourth Amendment.

Glenn's equal protection claim also fails. Glenn alleges discrimination based on gender and maintains that he was denied equal protection. Glenn alleges that a female animal control officer, Hawley, had a long-standing affair with a prison trustee and, although Chief Bachand was aware of the affair, he did not fire or otherwise discipline her. He argues that this proves intentional gender discrimination.

Moreover, Glenn offers an affidavit, a sworn statement, and testimony from Hawley stating that she and Chief Bachand had a long running sexual relationship which sometimes

took place while they were both on duty.[67] At the time Glenn's termination was upheld, members of the City Council knew of Hawley's relationship with the prison trustee, but they had no knowledge of her relationship with Chief Bachand.[68]

Claims of discrimination under § 1983 and ACRA are analyzed in accordance with decisions interpreting 42 U.S.C. § 1981 and Title VII.[69] The common question under §§ 1981, 1983, and Title VII is whether intentional discrimination was present.[70] In a disparate treatment case, the plaintiff must prove that the defendant treated him more harshly than similarly situated employees under circumstances that suggest intentional discrimination.[71] Without a showing that he is similarly situated to Hawley, Glenn's equal protection claim fails.[72] The test to determine if plaintiff and another employee are similarly situated is rigorous.[73] Similarly situated employees must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.[74]

---

[67]Doc. No. 29, Ex. 14 and Deposition of Hawley, pp., Doc. No. 40.

[68]Doc. No. 29, Exs. 10, 11, 12, and 13.

[69]Ark. Code Ann. § 160-123-105; *Island*, 352 Ark. at 556.

[70]*Taylor v. City of St. Louis*, 702 F.2d 695, 697 (8th Cir. 1983).

[71]*Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986).

[72]*Klinger v. Dep't of Corr.*, 31 F.3d 727 (8th Cir. 1994).

[73]*Cronnquist v. City of Minneapolis,* 237 F.3d 920, 928 (8th Cir. 2000) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)).

[74]*Rodgers v. U.S. Bank*, 417 F.3d 845, 851 (8th Cir. 2005).

In this case, Hawley was an animal control officer and Glenn was a police officer. The public and the city government hold police officers to higher standards because the police protect the public and enforce laws.[75] In order to perform these duties effectively, the officer must maintain a semblance of discipline and restraint. Because Hawley is not subject to the same standards as a police officer, the § 1983 claim, based on equal protection, fails. The discrimination claim based on ACRA also fails.

Glenn produced evidence demonstrating that Chief Bachand did not abide by the rules that he enforced. Assuming that Hawley's statements about Chief Bachand's behavior are correct, Glenn's termination may have been unfair and hypocritical. However, discrimination laws do not give federal courts the power to sit as "super-personnel departments reviewing the wisdom or fairness of judgments made by employers, except to the extent that those judgments involve intentional discrimination."[76] Here, Glenn did not create a reasonable inference of intentional discrimination.

In view of the above, Glenn failed to offer sufficient evidence that his termination violated ACRA or the Equal Protection Clause of the Fourteenth Amendment. Because I find that no constitutional violations have occurred, the issues of qualified immunity and municipal liability need not be addressed.

The Motion for Summary Judgment is GRANTED. This case should be, and is, dismissed with prejudice.

IT IS SO ORDERED this 20th day of March 2007.

---

[75] *Sylvester*, 383 F.Supp. 2d. at 1139 (holding that police departments have a considerable interest in maintaining public's respect and protecting the public's safety).

[76] *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE